**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID SHINER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 13 C 5867 |
| | ) | |
| **BERNARD I. TURNOY**, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This is the ultimate followup on this Court's July 11, 2014 memorandum opinion and

order ("Opinion") that held defendant Bernard Turnoy ("Turnoy") to have willfully filed a

fraudulent income tax information return, thus violating 26 U.S.C. § 7434 ("Section 7434"), by

transmitting a Form 1099-MISC ("1099") to the Internal Revenue Service ("IRS") that reported

that Turnoy had made a "payment" to Shiner in 2012 -- a flat-out untruth that Turnoy clearly

knew to be false.  Having prevailed on that score following the litigants' submission of

cross-motions for summary judgment, Shiner has now filed a Motion for Damages and Final

Judgment (Dkt. No. 56) under the express provisions of Section 7434(b):

> In any action brought under subsection (a), upon a finding of liability on the part
> of the defendant, the defendant shall be liable to the plaintiff in an amount equal
> to the greater of $5,000 or the sum of --
>
> > (1)  any actual damages sustained by the plaintiff as a proximate
> > result of the filing of the fraudulent information return (including
> > any costs attributable to resolving deficiencies asserted as a result
> > of such filing),
>
> > (2)  the cost of the action, and
>
> > (3)  in the court's discretion, reasonable attorneys' fees.

Shiner does not list any "actual damages" that he has sustained in consequence of Turnoy's fraudlent filing.  But plainly that is true only because this lawsuit had to be brought to head off the inevitability of a large deficiency assessment by the IRS for the year 2012 directly attributable to Shiner's entirely proper nonreporting, in his income for that year, a purported "payment" to him falsely reported by Turnoy in the earlier-referred-to 1099.  Instead this preemptive lawsuit has itself generated real-world damages to Shiner in the form of the legal fees that he has had to incur to head off what would surely have been considerably larger "costs[1] attributable to resolving deficiencies asserted as a result of such filing" (to quote Section 7434(b)(1)'s example of "actual damages sustained by the plaintiff").  And as for the  statute's "proximate result" requirement, it is also unquestionable that this lawsuit would not have been brought (with Shiner's essential incurring of attorneys' fees to bring and pursue it) to challenge Turnoy's fraudulent filing but for that filing itself.[2]  Any potential deficiency assessment for the year 2012 by the IRS has been effectively negated by the Opinion, a copy of which this Court has transmitted to the IRS's Chicago Office (just as the Opinion had forecast in its footnote 5).

When this Court first received Shiner's current motion, its initial reaction was that the motion might be viewed as posing an interesting variant on the usual situation encountered in any type of litigation that includes a potential award of attorneys' fees as a consequence of the prevailing party's success.  Thus in the context of civil rights litigation under 42 U.S.C. § 1983, where 42 U.S.C. § 1988 calls for an award of attorneys' fees to a prevailing-party plaintiff, Farrar

_____

[1]  Ironically, those "costs" would have embraced legal fees incurred in contesting any deficiency assessed by the IRS.

[2]  What has just been said in the text is directly confirmed by the terms of each party's Motion for Summary Judgment (Shiner's motion is Dkt. 21, while Turnoy's cross-motion is Dkt. 24).

v. Hobby, 506 U.S. 103 (1992) upheld the denial of fees to a plaintiff who, although a "prevailing party," had prevailed only to the extent of obtaining a "nominal" damages award of $1 (see Carey v. Piphus, 435 U.S. 247 (1978)). And our Court of Appeals has since adopted the approach set out in Justice O'Connor's concurring opinion in Farrar, 506 U.S. at 120-22, in a situation where a plaintiff had achieved a somewhat larger "de minimis" victory rather than a purely "nominal" damages award (see Aponte v. City of Chicago, 728 F.3d 724, 727-28 (7th Cir. 2013)).

But before this opinion turns to the resolution of that issue in the context of this case, this Court wishes to eliminate any possible misunderstanding as to the real thrust of the Opinion. On that score it should be emphasized that this Court found no illegality involved as such in Turnoy's having placed a restrictive endorsement on the check for some $150,000 that he sent to Shiner in December 2012. That was based on Turnoy's position as to the amount that he owed Shiner as the latter's 50% share of the commissions generated by the procurement of two life insurance policies that had been issued in the preceding month.[3] There was no legal impropriety in Turnoy's effort to put pressure on Shiner, and thus to avoid a dispute and possible litigation on that issue, by pursuing his carrot-and-stick approach:

> Here is your ability to collect what I say I owe you -- but to cash the check, you'll have to give up your claim that I owe you more than that.

Where Turnoy crossed the border from that lawful effort to exert commercial pressure into the forbidden area of illegality, however, was in his reporting that amount to the IRS as "payment" when it clearly was not. And Shiner's institution and prosecution of this litigation

---

[3] It ultimately turned out, as confirmed by state court litigation between the parties, that Turnoy's position as to the amount he owed Shiner was right and Shiner's much larger claim was wrong -- a fact that was and is irrelevant to the Section 7434 issue posed by this litigation.

was entirely proper to challenge that illegality and, in so doing, to spare himself the necessary expenditure of a good deal more in the difficulty (and the necessary expenditure of substantial accompanying attorneys' fees) that surely would have flowed from the disparity between (1) the false and fraudulent 1099 and (2) Shiner's 2012 tax return that properly omitted the approximately $150,000 non-payment.

In short, any superficial possible analogy between the type of case exemplified by Farrar or Aponte does not survive further analysis. Shiner has established his having incurred costs of $1,002.90 plus attorneys' fees aggregating $15,312 through April 18 of this year, and nothing has suggested any error or unreasonableness in either of those figures. It would be a major injustice for Shiner to be compelled to bear, unrecompensed, those amounts expended to establish the unlawfulness of Turnoy's willfully fraudulent filing of the 1099.

Accordingly, in the exercise of judicial discretion that Congress has conferred in Section 7434(b)(3), Turnoy is ordered to pay to Shiner the requested sum of $16,314.90. This is the final judgment in this action.

_____
Milton I. Shadur
Senior United States District Judge

Date:  August 11, 2014